UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TAE DANIEL LEE,                                             :

                              Plaintiff,                   :

                   -against-                               : **REPORT AND RECOMMENDATION**

WOODSTOCK OUTDOOR COMPANY, INC.                            :        17-CV-7696 (JPO) (KNF)
d/b/a WOODSTOCK OUTDOOR COMPANY,
                                                           :
                              Defendant.
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL J. OETKEN, UNITED STATES DISTRICT JUDGE

        Plaintiff Tae Daniel Lee ("Lee") commenced this action against Woodstock Outdoor

Company, Inc. ("Woodstock") and Nabile Taslimant ("Taslimant"), pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, New York Labor Law ("NYLL") Article 6 and

Title 12 of the Compilation of Codes, Rules and Regulations of the state of New York

("NYCRR"), to recover: (1) unpaid minimum wages under NYLL; (2) unpaid overtime

compensation under FLSA and NYLL ; (3) unpaid spread-of-hours compensation under NYLL;

(4) damages for failure to comply with wage statement requirements under NYLL; (5) unlawful

deductions under NYLL; and (5) damages for breach of contract.  On September 4, 2018, a

judgment by default was entered against Woodstock and the matter referred to the undersigned

for an inquest on damages.  On January 16, 2020, your Honor dismissed all claims against

Taslimant, without prejudice.  Before the Court are: (1) "Plaintiff's Second Amended Proposed

Findings of Fact and Conclusions of Law" with exhibits, Docket Entry No. 63; and (2) a

"Memorandum in Support of Plaintiff's Request for an Award of Attorneys' Fees and Costs,"

Docket Entry No. 64.   The plaintiff's inquest submissions are unopposed.

## PLAINTIFF'S INQUEST SUBMISSIONS

<u>Lee's Declaration with Exhibits</u>

Lee submitted his declaration stating that, between December 5, 2016 and April 13, 2017, he was employed by Woodstock, the operator of general merchandise and clothing retail outlets, as an art designer.  Throughout his employment with Woodstock, Lee performed various tasks, including "making consumer sales inside the retail locations operated by Defendant Woodstock, serving as a driver to Taslimant, transporting supplies form the New York City area to Defendant Woodstock's retail shops, cleaning and maintaining such retail shops and completing retail sales paperwork."  In performing these tasks as a substantial part of his employment, Lee "ordered and dispatched goods between New York and other states, verified and processed credit card transactions by transmitting such transactions for approval and processing to locations outside of New York state, used telephone and internet wires to communicate with entities and individuals outside of New York state and kept records of such communications and transactions."  Lee states that, during his employment with Woodstock, "the creation of clothing and logo designs" was never his primary duty and did not exceed more than 50% of his work time.  Lee did not have the authority to hire or fire other employees or to provide recommendations in connection with hiring or firing employees and he did not have or exercise discretion and independent judgment concerning matters of significance.

Lee contends that "[m]ost of the terms of my employment with Defendant Woodstock are set forth memorialized in an email exchange between Taslimant and me," attached to Lee's declaration as Exhibit A.  Exhibit A contains an email message from Taslimant to Lee, dated "December 9, 2016 at 10:03AM," stating:

Some minor changes.
Start work with Woodstock OUTDOOR dates below, with agreement to pay through 1099.
Xxxx since you gave notice:
We should start in two weeks. Right?
12/05/16 ~ 12/23@ $750 per week.
($750 is contingent on continued participation on or after 12/26)

I will have the freedom and able to freelance for my previous employer for the following two weeks remotely if necessary.
12/26/16 ~ 01/06/17.

Starting 12/26/16, I will be fully employed with Woodstock Outdoor Company with the following terms.
$90,000 annual salary.
Healthcare coverage for myself and my wife. - reimbursed for 600 dollars each towards Heath exchange payment.
Security package for 2 months with same monthly rate if either one of us terminates my employment with Woodstock OUTDOOR
co.
Upgrade on a laptop for work.
Miscellaneous necessities for design. Pantone books, office supplies, etc.
vacation days and sick days are still pending.
In addition to above terms, we agreed that you will give full contribution any Woodstock ARts and Rec plus any entrepreneurial
business we agree to venture in the near future.

Lee asserts that Woodstock "would reimburse me for healthcare coverage for me and my wife at the rate of $1,200 per month" and "would pay me two months' salary at my annual salary rate in the event that my employment was terminated, whether by me or by it." Lee states that his "contractual salary was based on and intended to compensate [him] for a forty-hour workweek." From December 26, 2016, to April 13, 2017, Lee: (a) worked "at least 60 hours each week; (b) "frequently worked seven days a week"; and (c) "worked at least 10 continuous hours in a day on average three times per week." Lee states that Woodstock paid his wages as follows:

| Date | Amount |
| --- | --- |
| January 14, 2017 | $1,000 |
| January 18, 2017 | $1,000 |
| January 30, 2017 | $1,200 |

| January 31, 2017 | $1,000 |
|---|---|
| February 23, 2017 | $1,500 |
| March 8, 2017 | $500 |
| March 8, 2017 | $500 |
| March 21, 2017 | $1,500 |
| March 25, 2017 | $100 |
| March 28, 2017 | $700 |
| April 3, 2017 | $400 |

On multiple occasions, Woodstock paid Lee by check that was returned by his bank for

insufficient funds, resulting in the following fees imposed on Lee:

| Date | Amount | Check | Fee |
|---|---|---|---|
| January 24, 2017 | $1,000 | Check No. 2028 | $12 |
| February 26, 2017 | $1,000 | Check No. 2144 | $12 |
| March 11, 2017 | $500 | Check No. 9186 | $12 |
| March 30, 2017 | $700 | Check No. 2129 | $12 |
| March 31, 2017 | $700 | Check No. 2128 | $12 |
| April 4, 2017 | $1,000 | Check No. 2222 | $12 |

Lee states that Woodstock made "just one payment to me to reimburse me for health insurance

expense: February 10, 2017, in the amount of $1,065."  Woodstock never provided Lee wage

statements.  Attached to Lee's declaration are also: (i) Exhibit B, Woodstock's "paychecks still

in [his] possession"; (ii) Exhibit C, Lee's "banking statements reflecting" payments of wages by

"Woodstock General Supply," which Lee understands from communications with Taslimant "is

an assumed name under which Defendant Woodstock did business"; and (iii) Exhibit D,

documents from Lee's bank identifying "returned checks and associated fees."

Proposed Conclusions of Law: Unpaid Overtime Compensation

In his proposed conclusions of law, Lee contends that his annual salary's "workweek

equivalent salary equals $1,726.02598 per week, calculated as: $90,000 (Plaintiff's annual

salary)  ÷ 52.1429 (the number of weeks in a calendar year) = $1,726.02598 per week."  Lee

asserts that his "regular rate of pay, the above workweek equivalent is divided by the number of

4

hours the salary is intended to compensate" and, since his "salary was intended to compensate for a forty hour workweek," his "regular rate of pay equals $43.1506495 per hour, calculated as: $1,726.02598 (Plaintiff's workweek equivalent salary) ÷ 40 (the number of hours the salary is intended to compensate) = $43.1506495."  According to Lee, his "hourly overtime rate equals $64.7259742," which is one and one-half time his regular rate of pay.  As Lee worked a minimum of 20 hours in excess of 40 hours per week during the entirety of his employment, he asserts that he is owed 20 hours of overtime compensation for each week worked, namely, "$19,972.59, calculated as: $64.7259742 (Plaintiff's overtime hourly rate) * 20 (the minimum number overtime hours worked by Plaintiff during his employment) * 15.42857143 (the number of weeks for which Plaintiff is owed overtime) = $19,972.5863."

Proposed Conclusions of Law: Breach of Contract Damages

Lee contends that Woodstock breached its obligations under the terms of their employment agreement by failing to pay him wages owed for work performed between December 5 and 23, 2016, and "contractual severance payments."  Between December 5 and 23, 2016, Lee worked 18 days, which is equivalent of two weeks and four days, also "expressed as 2.57142857 weeks, calculated as: 18 (number of days for which Plaintiff performed work for Defendant Woodstock between December 3 and December 23, 2016) ÷ 7 (the number of days in a week) = 2.57142857."  Lee asserts that for the period between December 5 and 23, 2016, he was owed "$1,928.57, calculated as: 2.57142857 (the number of weeks worked during such period) * $750 (the payment per week of work during such period) = $1,928.57143."  Woodstock paid Lee $1,000 for the work performed between December 5 and 23, 2016.  Thus, the breach of contract damages amount, for the period between December 5 and 23, 2016, is $928.57.

Lee contends that, during the period between December 26, 2016, and April 13, 2017, which is 109 days or "15.8571429 weeks (109 days divided by 7)," his "workweek salary" was "$1,726.02598, which is calculated by dividing $90,000 (Plaintiff's annual salary) by 52.1429 (the number of weeks in a calendar year)." According to Lee, he was entitled to a contractual salary of "$26,630.12, calculated as: $1,726.02598 (Plaintiff's workweek salary) * 15.42857143 (the number of weeks worked) = $26,630.1151." Woodstock paid Lee $6,400 for the work he performed between December 26, 2016 and April 13, 2017. Thus, the breach of contract damages amount, for the period between December 26, 2016 and April 13, 2017, is $20,230.12.

Lee contends that Woodstock agreed to pay "severance in the amount of two months' salary at his annual salary rate upon the termination of his employment by either Plaintiff or Defendant." Since Lee's monthly salary was $7,500, calculated by dividing his annual salary of $90,000 by twelve, the number of months in a calendar year, and Woodstock did not pay any severance, Lee is entitled to breach of contract damages for unpaid severance in the amount of $15,000. According to Lee, the total contractual damages amount is $36,158.69.

Proposed Conclusions of Law: Wage Statement Damages

Lee contends that, from December 26, 2016, to April 13, 2017, his damages owing to Woodstock's failure to provide wage statements under NYLL, are $5,000.

Proposed Conclusions of Law: Unlawful Deductions

Lee maintains that Woodstock agreed "as part of Plaintiff's compensation, to reimburse Plaintiff for health insurance expenses for him and his wife the rate of $1,200 per month," and, after December 26, 2016, Lee was employed for a period that included three complete calendar months: January, February and March of 2017. Lee asserts that he was entitled to $3,600, but Woodstock "deducted from Plaintiffs [sic] wages all of this agreed-upon compensation for health

6

insurance reimbursement, with exception of a single payment on February 10, 2017, in the amount of $1,065." Thus, Woodstock "deducted from Plaintiff's wages a total of $2,535, calculated as: $3,600 (the amount of agreed-upon compensation for reimbursement of health insurance expenses) - $1,065 (the total amount of compensation paid to Plaintiff for reimbursement of health insurance expenses) = $2,535." Lee asserts that the total amount of fees he incurred as a result of Woodstock' checks issued to him with insufficient funds is $72, which represents unlawful wage deductions in violation of NYLL. Thus, the total amount of damages for unlawful deductions is $2,607.

Proposed Conclusions of Law: Pre-and Post-Judgment Interest

Lee contends that he is entitled to prejudgment interest on his breach of contract and NYLL claims at the statutory rate of nine percent per annum. According to Lee, his breach of contract and NYLL damages "total $63,738.28, consisting of $27,579.59 in damages under the NYLL comprised of $19,972,972.59 in unpaid overtime wages, . . . $5,000 in wage statement damages, . . . $2,607 in unlawful deductions, . . . and $36,158.69 in breach of contract damages." A reasonable intermediate date from which to calculate statutory interest is October 20, 2017, the midpoint between December 5, 2016, when Lee started working for Woodstock, and September 4, 2018, the date of default judgment. The number of days between October 20, 2017, and September 4, 2018, is 319 days. Thus, prejudgment interest accrued "for .87 of one year, calculated as: 319 (the number of days for which prejudgment interest has been accumulating)" divided by 365, the number of days in a calendar year. Lee seeks $4,990.71 in prejudgment interest, "calculated as follows: $63,738.28 (the sum of Plaintiff's breach of contract and NYLL damages)" multiplied by ".09 (statutory rate of interest)," multiplied by ".87 (the percentage of one year for which interest was accruing)." Moreover, Lee "is entitled to an additional amount

of interest on the amount of $68,728.99, comprising the sum of the total amount of Plaintiff's breach of contract and NYLL damages ($63,738.28) and the prejudgment interest on such principal ($4,990.71).  Such additional amount is to be calculated at the statutory rate of 9% per annum for the period from September 4, 2018 through the date of entry of final judgment."

Proposed Conclusions of Law: Liquidated Damages

Lee seeks liquidated damages in the amount of $27,579.59, consisting of: (a) $19,972.59, based on failure to pay overtime compensation; (b) $5,000, based on wage statement violations; and (c) $2,607, based on unlawful deductions.

Attorney's Fees and Costs

In support of Lee's request for attorney's fees and costs his attorneys Nathaniel K. Charny ("Charny") and Russell G. Wheeler ("Wheeler") submitted declarations with exhibits. Charny states that he graduated from University at Buffalo School of Law in 1991, after which he clerked for a United States district judge in Pennsylvania, from 1991 until 1993.  Thereafter, he practiced labor and employment law as an associate at Cohen, Weiss & Simon and Eisner & Hubbard law firms.  From 1999 until 2001, Charny served as assistant attorney at the Writers Guild of America East.  In 1999, Charny was suspended from practice of law for 24 months based on "certain misstatements I made to the Court-Appointed Teamster Election Officer in 1997."  Charny states that he returned to good standing in all jurisdictions by 2002 and suffered no discipline since then.  In 2003, Charny was appointed legal director for "Professional Staff Congress/CUNY [The City University of New York]," the labor union representing professional staff and faculty at The City University of New York ("CUNY").  Since 2005, when Charny started his own law firm, he has represented over one thousand clients in labor and employment matters.  Charny has been an adjunct professor at CUNY Queens College and taught labor

relations at the Culinary Institute of America.  From 2009 until 2016, Charny served as senior

legal advisor to the non-profit law firm Worker Justice Center, where he managed the firm's

litigation and staff of attorneys and appeared as primary counsel in dozens of cases resulting in

the recovery of hundreds of thousands of dollars for largely immigrant workers.  Recently,

Charny co-litigated: (a) a gender and sexual harassment case against Domino's Sugar Refining,

Inc., resulting in a plaintiff's verdict of $13.4 million; and (b) a national origin discrimination

case against Domino's Sugar Refining Inc., resulting in a plaintiff's verdict of $2.35 million.  In

both cases, the plaintiffs were awarded attorney's fees, with courts finding his hourly rate of

$500 reasonable.  As a result of his experience and reputation, Charny is consulted by

practitioners regularly for advice on labor and employment matters.  Attached to Charny's

declaration is the retainer agreement executed by Lee, requiring that the client reimburse the

attorneys for out-of-pocket expenses, including legal database research, PACER and travel costs

and expenses.

Wheeler is an attorney with Charny & Wheeler, P.C.  Wheeler states in his declaration

that he graduated in 2002 from Washington College of Law, after which he clerked for a United

States magistrate judge in Virginia, from 2002 to 2003.  Wheeler was admitted to the New York

bar in September 2003, and he worked as a criminal defense attorney for the Nassau County

Legal Aid Society and as an associate in the general litigation department at the Cozen O'Connor

law firm.  Since joining the Charny & Associates law firm in September 2011, Wheeler has

represented numerous plaintiffs in FLSA and NYLL cases, as well as discrimination and

retaliation cases.  Since 2013, Wheeler has represented hundreds of employees in labor

arbitrations and contract and civil service disciplinary proceedings.  Moreover, Wheeler

represents and advises employees in connection with employment issues, including negotiating

severance agreements, reasonable accommodation matters and internal investigations.  Wheeler states that, in September 2017, the Charney & Wheeler P.C. law firm "employed Elizabeth Jackson ['Jackson'] as a paralegal, a then-graduate of Brooklyn Law School, since admitted to the New York Bar."

Attached to Wheeler's declaration are: (a) Exhibit 1, "an itemized billing memorandum of Charney & Wheeler, P.C. reflecting services performed and costs disbursed on Plaintiff's behalf"; and (b) Exhibit 2, "the billing memorandum" setting forth "disbursements, including the date disbursed by Charny & Wheeler P.C., the nature of the cost or expense and the amount paid."  Wheeler states that Exhibit 1 "is derived from individual time sheets contemporaneously prepared by the attorneys and staff of Charny & Wheeler P.C. who performed work in connection with Plaintiff's claims."  Each entry shows the date on which the services were performed, the initials of the person providing the services, the nature of the services rendered, the time expended for the services associated with each entry and "the matter value calculated at the prevailing rates in the Southern District of New York appropriate to the attorney performing the work."  Wheeler states that 78.1 hours of attorney and paralegal time were expended on this action at "the applicable prevailing hourly rates of $500, $350 and $125, the fees incurred total no less than $29,245.00."  Wheeler states that the total amount of costs and expenses is $820.11.  Thus, the plaintiff seeks a total attorney's fee award of $30,065.11.

Lee asserts in his memorandum of law that the hourly rates requested are $500 for Charny, who expended 28.2 hours on the action, $350 for Wheeler, who expended 39.7 hours on the action, and $125 for Jackson, who expended 10.2 hours in connection with this action.  Lee asserts that the reasonable out-of-pocket expenses include computerized research and PACER access fees, as contemplated by the retainer agreement, and "travel expenses are chargeable."

**LEGAL STANDARD**

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

**FLSA**

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

"The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid

11

overtime compensation, as the case may be, and in an additional equal amount as liquidated

damages."  29 U.S.C. § 216(b).  However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the court shall "allow a

reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

### NYLL

"An employer shall pay an employee for overtime at a wage rate of one and one-half

times the employee's regular rate in the manner and methods provided in and subject to the

exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the Fair Labor Standards Act of 1938, as

amended, provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not

apply."  12 NYCRR § 142-2.2.

NYLL requires every employer to provide statements, "with every payment of wages,

listing" certain employment-related information, including the dates of work covered by that

payment of wages and the rate of pay and basis thereof.  NYLL § 195(3).  A plaintiff may

recover, for the employer's failure to provide required statements, damages of $250 for each

work day that the violation occurred, not exceeding $5,000, "together with costs and reasonable

attorney's fees," under NYLL § 195(3).  See NYLL § 198 (1-d).  NYLL Article 19 provides:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as

liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

NYLL § 663(1).

"No employer shall make any deduction from the wages of an employee, except deductions which," inter alia, "are expressly authorized in writing by the employee and are for the benefit of the employee, provided that" certain conditions are met.  NYLL §193(1)(b).

### Breach of Contract

"In a breach of contract action, the non-breaching party is generally entitled to compensatory damages to place it in the same position it would have occupied had the breaching party satisfied its obligations under the contract."  Vill. of Ilion v. Cty of Herkimer, 23 N.Y.3d 812, 822-23, 993 N.Y.S.2d 648, 654 (2014).  "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract."  New York Civil Practice Law and Rules ("CPLR") § 5001(a).

Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

CPLR § 5001(b).

"Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."  CPLR § 5004.

### Attorney's Fees

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, 522 F.3d 182, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the

lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required

by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  In calculating

the presumptively reasonable fee, a district court must consider, among others, the twelve factors

articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Circ. 1974).  See Arbor

Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190.  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

> Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services

by lawyers of reasonably comparable skill, experience, and reputation."  Farbotko v. Clinton Cty.

of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11,

104 S. Ct. 1541, 1547 n.11 (1984)).  "Thus, 'a reasonable hourly rate' is not ordinarily

ascertained simply by reference to rates awarded in prior cases."  Id.

> [T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing
> market rate' contemplates a case-specific inquiry into the prevailing market rates
> for counsel of similar, experience and skill to the fee applicant's counsel.  This may,
> of course, include judicial notice of the rates awarded in prior cases and the court's
> own familiarity with the rates prevailing in the district.

> Id. at 209.

"[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the

attorney's own affidavits'—that the requested hourly rates are the prevailing market rates."  Id

(quoting <u>Blum</u>, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11).  Attorney-fee awards include

reasonable out-of-pocket expenses that are charged to clients ordinarily, such as photocopying,

travel, telephone costs, postage and computerized research.  <u>See</u> <u>LeBlanc-Sternberg v. Fletcher</u>,

143 F.3d 748, 763 (2d Cir. 1998).  A fee application that is not supported by evidence of

"contemporaneous time records indicating, for each attorney, the date, the hours expended, and

the nature of the work done" should normally be denied.  <u>New York State Ass'n for Retarded</u>

<u>Children, Inc. v. Carey</u>, 711 F.2d 1136, 1154 (2d Cir. 1983).

## APPLICATION OF LEGAL STANDARD

In his Proposed Conclusions of Law, Lee asserts that he is entitled to various amounts in

damages that are calculated in a certain way.  Lee failed to submit evidence identifying the

person(s) who performed the calculations or the reasons for the calculation methods employed.

For example, Lee does not explain why he used, inconsistently, a different number of decimal

place values in decimal numbers, ranging from two, as in $19,972.59, the amount of overtime

compensation sought, to eight, as in 15.42857143, the number of weeks for which overtime

compensation is sought.  Lee does not explain what standard he used to calculate "52.1429,"

which he asserts is "the number of weeks in a calendar year."  If, as it appears to be, Lee used the

Gregorian calendar in which weeks start on Sunday to calculate "the number of weeks in a

calendar year," and the calendar year for which he was calculating the number of weeks is 2017,

then the exact number of weeks in 2017 was 52.142857142857.  Lee failed to explain the basis

for rounding up "the number of weeks in a calendar year" to four decimal places.  Although in

the Proposed Findings of Fact Lee asserts that the period of time from December 26, 2016, to

April 13, 2017, "comprises 108 days," which is "equivalent to 15 weeks and 3 days, which also

may be expressed as 15.42857143 weeks," in the Proposed Conclusions of Law he asserts that

the period of time from December 26, 2016, to April 13, 2017, comprises "15.8571429 (109 days

divided by 7)."  Lee's Proposed Findings of Fact and Conclusions of Law are inconsistent, and

he provided no explanation for the inconsistencies.  The Court will: (i) consider Lee's

submissions despite the above-mentioned deficiencies and inconsistencies; and (ii) round

decimal numbers to full numbers or full numbers and one-half, as warranted.

Unpaid Overtime Compensation from December 26, 2016, to April 13, 2017

        Lee did not allege in his complaint or state in his declaration that his employment

agreement contained any terms concerning overtime, and no such terms appear in the "December

9, 2016 at 10:03AM" email message, which Lee asserts governs the terms of his employment

with Woodstock.  Lee asserted in his complaint, under his third cause of action "failure to pay

overtime in violation of New York Law," that he "received no overtime compensation as

required by the NYLL," without identifying any section of NYLL in support of that assertion.  In

his conclusions of law, Lee contends that Woodstock is liable to him for unpaid overtime

compensation, making citation to "29 U.S.C. § 207(a)(1); N.Y. Lab. L. § 198; 12 NYCRR 142-

2.2."

> [T]he statutory language and cumulative legislative history of Labor Law article 6
> in general and section 198 (1–a) in particular convince us that the statutory remedy
> of an award of attorney's fees to a prevailing employee, as well as the liquidated
> damages remedy where a willful failure to pay wages has been established, are
> limited to actions for wage claims founded on the substantive provisions of Labor
> Law article 6.

> Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 464, 605 N.Y.S.2d 213, 217 (1993).

"New York does not have a mandatory overtime law."  Hornstein v. Negev Airbase

Constructors, 110 A.D.2d 884, 885, 488 N.Y.S 2d 435, 437 (App. Div. 2d Dep't 1985).  Title 12

of NYCRR does not mandate overtime compensation; rather, it provides "the manner and

methods" of paying the overtime wage rate, which is that provided by FLSA.  12 NYCRR § 142-

2.2.  Thus, since: (a) Lee failed to assert in his complaint that he has an enforceable contractual right to overtime compensation; (b) New York does not have a mandatory overtime law; (c) NYLL § 198 provides remedies only respecting "actions for wage claims founded on the substantive provisions of Labor Law article 6," Gottlieb, 82 N.Y.2d at 464, 605 N.Y.S.2d at 217; and (d) Lee is not entitled to overtime compensation under NYLL article 6, as no overtime compensation provision exists in NYLL article 6, Lee cannot obtain damages on his claim for overtime compensation by invoking NYLL § 198.  However, Lee may obtain damages based on Woodstock's failure to pay overtime compensation, under FLSA, 29 U.S.C. § 207(a)(1).

From December 26, 2016, to April 13, 2017, Lee worked 20 hours overtime weekly, without compensation.  Based on his annual salary of $90,000 during that time period, Lee's: (i) weekly salary was $1,731 ($90,000 divided by 52 weeks); (ii) regular rate of pay was $43 ($1,731 divided by 40 hours); and (iii) overtime hourly rate was $64.50 ($43 times one and one-half).  Rounding up 15 weeks and three days, the number of weeks Lee worked from December 26, 2016, to April 13, 2017, to 15 weeks, the Court finds that Lee's overtime compensation owed by Woodstock for that time period, pursuant to FLSA, 29 U.S.C. § 207(a)(1), is $19,350.

Breach of Contract Damages from December 5 to 23, 2016

From December 5 to 23, 2016, Lee worked 18 days, which the Court rounds up to two and one-half weeks.  The "December 9, 2016 at 10:03AM" email from Taslimant to Lee, on which Lee relies for the terms of the parties' agreement, indicates, unambiguously, that between December 5 and 23, 2016, Lee would be paid $750 weekly, "contingent on continued participation on or after 12/26," which Lee satisfied.  Thus, Lee's total wages for the work he performed from December 5 to 23, 2016, are $1,875.  Woodstock paid Lee $,1000 by check No. 2043, issued from "Woodstock General Supply" and dated January 14, 2017, for the work Lee

performed from December 5 to 23, 2016, identified on the check as "freelance." Thus, the amount of contractual damages for the work Lee performed period from December 5 and 23, 2016, is $875.

Breach of Contract Damages from December 26, 2016 to April 13, 2017

As explained above, from December 26, 2016, to April 13, 2017, Lee worked 15 weeks and his weekly salary was $1,731, resulting in total wages for that time period of $25,965. In his Conclusions of Law, Lee asserts that, from December 26, 2016, to April 13, 2017, Woodstock paid Lee "$6,400 to compensate him for work performed after December 26, 2017," making citation to paragraph No. 27 of his declaration. Paragraph No. 27 of Lee's declaration indicates that Lee received from Woodstock $9,400 as compensation for the work he performed during the entirety of his employment with Woodstock, of which $1,000 was compensation for the work Lee performed from December 5 to 23, 2016. Thus, according to Lee's declaration, he received $8,400 from Woodstock for the work he performed from December 26, 2016, to April 13, 2017. The Court finds that the amount of contractual damages for the work Lee performed from December 26, 2016, to April 13, 2017, is $17,565 ($25,965, the amount of total wages, minus $8,400, the payment received).

Severance Pay and Healthcare Coverage

Lee asserts in his declaration that Woodstock "would pay me two months' salary at my annual salary rate in the event that my employment was terminated, whether by me or by it." The "December 9, 2016 at 10:03AM" email message from Taslimant to Lee, which Lee contends contains "[m]ost of the terms of my employment," contains the following text:

> Starting 12/26/16, I will be fully employed with Woodstock Outdoor Company with the following terms.
> $90,000 annual salary.

Healthcare coverage for myself and my wife. - reimbursed for 600 dollars each towards Heath exchange payment.
Security package for *2* months with same monthly rate if either one of us terminates my employment with Woodstock OUTDOOR co.

The "December 9, 2016 at 10:03AM" email message does not support Lee's assertion that Woodstock would pay Lee "two months' salary at my annual salary rate in the event that my employment was terminated, whether by me or by it" because it states "[s]ecurity package for 2 months with same monthly rate," without identifying the "monthly rate" to which the word "same" refers.  The term concerning "[s]ecurity package for 2 months with the same monthly rate" follows the term concerning "[h]ealthcare coverage for myself and my wife – reimbursed for 600 dollars each toward Heath[1] exchange payment."  The email exchange between Taslimant and Lee preceding the "December 9, 2016 at 10:03AM" email message indicates in connection with the healthcare and security package: (a) on December 7, 2016, at "9:10AM," Taslimant wrote to Lee, "[b]elow are the terms we agreed on," including that "[s]tarting 12/26/16, I will be fully employed with Woodstock Outdoor company with the following terms: $100,000 annual salary.  $400 per month reimbursement for healthcare"; and (b) on December 9, 2016, at "12:04AM," Lee wrote to Taslimant, "[b]elow are the terms we agreed on," including that "[s]tarting 12/26/16, I will be fully employed with Woodstock Outdoor Company with the following terms.  $90,000 annual salary.  Healthcare coverage for myself and my wife.  Security package for 2 months with same monthly rate if either one of us terminates my employment with Woodstock Arts & Recreation."  Given that: (1) Lee's salary was agreed, in the "December 9, 2016 at 10:03M" email message, to be "$90,000 annual salary"; (2) Lee asserts in his declaration that "Woodstock would reimburse me for healthcare coverage for me and my wife at the rate of $1,200 per month"; and (3) the "[s]ecurity package for 2 months with same monthly rate" term

---

[1]  The Court assumes that "Heath" was intended by the contracting parties to mean "Health."

19

in the "December 9, 2016 at 10:03 AM" email message follows immediately after the term concerning "[h]ealthcare coverage for myself and my wife," which Lee asserts in his declaration is "$1,200 per month," it would appear that the words "same monthly rate" in the phrase "[s]ecurity package for 2 months with same monthly rate" refer to the monthly rate asserted to be due to Lee for "[h]ealthcare package for myself and wife."  The words "same monthly rate" do not appear to refer logically to monthly wages calculated based on the"$90,000 annual salary" because Lee's salary was agreed by the parties to be on an annual, not a monthly basis, and the word "same" in the phrase "same monthly rate" would be meaningless, as it would be referring to a non-existent "monthly rate."

Lee's assertion in his declaration that "Woodstock would reimburse me for healthcare coverage for me and my wife at the rate of $1,200 per month" is not supported by the "December 9, 2016 at 10:03AM" email message, which states that "[h]ealthcare coverage for myself and my wife. – reimbursed for 600 dollars each toward Heath exchange payment."  The December 9, 2016 at 10:03AM" agreement does not state the reimbursement to Lee and his wife would be "per month"; rather, it states that Lee would be "reimbursed for 600 dollars each towards Heath exchange payment."  Lee does not mention or explain in his declaration: (a) what "Heath exchange payment" is; (b) whether he or his wife made any "Heath exchange payment"; and (c) the amount of any "Heath exchange payment" made by him or his wife.  Lee concedes that "[h]ealthcare coverage for myself and wife" was agreed by the parties to be in the form of a reimbursement, but no evidence exists that Lee or his wife made any payment(s) for health care coverage for which reimbursement is sought.  Given that the "December 9, 2016 at 10:03 AM" email message does not indicate that the health care coverage reimbursement "for $600 dollars each towards Heath exchange payment" was to be paid to Lee on a monthly basis, Lee's

assertion in his declaration, that "Woodstock would reimburse me for healthcare coverage for me and my wife at the rate of $1,200," is inconsistent with the health care coverage term contained in the "December 9, 2016 at 10:03AM" email message.

Lee asserts that, "as reimbursement of health insurance expenses for Plaintiff and his wife was an agreed-upon component of Plaintiff's compensation, Defendant Woodstock's failure to remit such amounts constitutes an unlawful deduction of wages within the meaning of N.Y. Lab. L. § 193." However, Lee does not make citation to any authority in support of this conclusory assertion. "A 'deduction' literally is an act of taking away or subtraction." Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 584, 825 N.Y.S.2d 674, 676 (2006). Lee's employment agreement with Woodstock contemplated Woodstock's reimbursement "for 600 dollars each towards Heath exchange payment," without explaining "Heath exchange payment" or identifying whether the payor(s) of the "Heath exchange payment" is Lee, his wife or a third party. A reimbursement is not a deduction, let alone an unlawful deduction; rather, in this case, it is the repayment of expenses incurred by an unidentified person(s) or entity for the "Heath exchange payment." Moreover, absent any expenses, i.e., "Heath exchange payment," actually incurred no basis exists for any reimbursement.

The Court finds that Lee failed to establish the amount of damages respecting the "[s]ecurity package for 2 months" and "[h]ealthcare coverage for myself and my wife" with reasonable certainty. See Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155.

Damages for Violating Wage Statement Requirements under NYLL § 195(3)

Lee did not receive a statement with every payment of wages from Woodstock, as required by NYLL § 195(3), during the period of work from December 26, 2016 to April 13, 2017, consisting of 108 days. Thus, Lee can recover $5,000, the maximum damages allowed for

Woodstock's violation of the wage statement requirements under NYLL § 195(3).  See NYLL § 198(1-d).

Damages: Unlawful Deductions

Lee incurred $72 in fees imposed by his bank for processing Woodstock's checks issued to Lee without sufficient funds.  The Court finds that bank processing fees Lee incurred as a result of depositing Woodstock's salary checks with insufficient funds to support them constitute unlawful deductions from Lee's wages, pursuant to NYLL § 193.  Thus, awarding Lee $72 in damages for unlawful deductions is warranted.

Liquidated Damages

Since damages for failure to pay overtime compensation based on FLSA are warranted in the amount of $19,350, Woodstock is also liable to Lee in an additional equal amount of $19,350 as liquidated damages.  See 29 U.S.C. § 216(b).  The amount of Lee's damages for unlawful deductions under NYLL § 193 is $72; thus, an additional amount of $72 in liquidated damages is also warranted pursuant to NYLL § 198(1-a).

Lee asserts he is entitled to $5,000 in liquidated damages equal to the damages for NYLL § 195(3) "wage statement violations."  However, remedies for violating NYLL § 195(3) are provided in NYLL § 198(1-d), and they are "not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."  Lee does not identify any provision of NYLL allowing liquidated damages for violating the wage statement requirements under NYLL § 195(3), and NYLL § 198(1-d) does not permit liquidated damages.  Thus, no liquidated damages are warranted for violations of the wage statement requirements under NYLL § 195(3).

The Court finds that the amount of $19,422 in liquidated damages is warranted, consisting of: (1) $19,350, for unpaid overtime compensation, pursuant to 29 U.S.C. § 216(b); and (2) $72, for violations of the wage statement requirements, pursuant to NYLL § 198(1-a).

Pre-Judgment Interest

Lee seeks prejudgment interest on his damages for: (a) unpaid overtime compensation; (b) violations of the wage statement requirements; (c) unlawful wage deductions; and (d) breach of contract.  "It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988).  Since Lee is entitled to $19,350 in liquidated damages for unpaid overtime compensation, pursuant to 29 U.S.C. § 216(b), he may not be awarded prejudgment interest on his unpaid overtime compensation damages under FLSA.

Lee seeks prejudgment interest for damages awarded him pursuant to NYLL § 198(1-d) for violations of the wage statement requirements under NYLL § 195(3).  "[W]here a statute does not specifically list interest as recoverable, interest may be available where a statute's legislative intent is to make its victims whole and its language does not limit the recovery available."  Tipaldo v. Lynn, 26 N.Y.3d 204, 213, 21 N.Y.S.3d 173, 178 (2015).  NYLL § 198 provides for "prejudgment interest as required under the civil practice law and rules," in NYLL § 198(1-a), as part of the remedies available to "any employee paid less than the wage to which he or she is entitled under the provisions of this article."  However, NYLL § 198 (1-d) does not provide  prejudgment interest as a remedy for violations of the wage statement requirements imposed by  NYLL § 195(3), and its language limits specifically the remedies available for such violations, namely, damages "not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees," and the "court may award other relief, including injunctive and

declaratory relief, that the court in its discretion deems necessary or appropriate."  NYLL § 198(1-d).  Accordingly, prejudgment interest is not allowed on the $5,000 damages for wage statement violations that ought to be awarded under NYLL § 198(1-d).

Lee seeks prejudgment interest on damages awarded him for unlawful wage deductions under NYLL § 193.  NYLL § 193 does not provide for prejudgment interest and Lee failed to make citation to any binding authority allowing prejudgment interest on damages awarded for unlawful deductions from wages under NYLL § 193.  Accordingly, awarding Lee prejudgment interest on damages for unlawful wage deductions, under NYLL § 193, is not warranted.

Lee seeks prejudgment interest on the breach of contract damages, pursuant to CPLR §§ 5001 and 5004, contending that interest of nine percent per year shall be computed from October 20, 2017, which is the midpoint between December 5, 2016, when he started working for Woodstock, and September 4, 2018, when a default judgment was entered.  The amount of Lee's contractual damages is $18,440.  The Court finds that a simple interest of nine percent per annum on the amount of $18,440 is warranted, and should be computed from the date that will be determined by the Clerk of Court to be the midpoint between December 5, 2016, and the date preceding the date on which the final judgment is entered in this action.

Post-Judgment Interest

The Court finds that awarding post-judgment interest to Lee, pursuant to 28 U.S.C. § 1961, is warranted.

Attorney's Fees and Costs

Lee seeks $30,065.11 in attorney's fees and costs, consisting of $29,245 in attorney's fees and $820.11 in costs.

(a)  Reasonable Hourly Rate

24

This action does not involve any novel or difficult questions, and the level of skills required to perform the legal services properly is basic.  Lee's retainer agreement with his counsel, Charny & Wheeler P.C., is contingent and provides that, in lieu of "Charny's] hourly rate of $500 per hour for attorney time and $100 per hour for paralegal time," Lee agrees "to pay the firm a contingency fee," which includes the amount awarded as attorney's fees, and "out-of-pocket expenses."  Charney and Wheeler did not state in their respective declarations; (a) whether any employment was precluded due to the acceptance of this case; (b) any time limitations were imposed by the client or circumstances; (c) the undesirability of the case; and (d) their respective customary hourly rates.  Charny stated that in an unrelated matter, the court "ordered my hourly rate to be $500."  Wheeler stated that, "[a]t the applicable prevailing hourly rates of $500, $350 and $125, the fees incurred total no less than $29, 245.00."  Exhibit 1 to Wheeler's declaration indicates the hourly rates charged as follows: (1) $500, by "NC," who is presumed to be Charny; (2) $350, by "RW," who is presumed to be Wheeler; and (3) $125, by "EJ," who is presumed to be Jackson.  Jackson did not submit a declaration.

Charny's declaration establishes that he has significant experience representing clients in labor and employment matters, including being the principal litigator in wage and hour and employment discrimination cases.  Although Charny did not state his customary hourly rate, he charged a $500 hourly rate in this case, and Lee's retainer agreement indicates Charny's "normal hourly rate" is $500.  The Court finds that the $500 hourly rate charged by Charny is reasonable.

Wheeler's declaration shows that, since 2011, he has been practicing extensively in the field of labor and employment law.  Wheeler did not state his customary hourly rate, but it appears from Exhibit 1 that he charged a $350 hourly rate in this case.  The Court finds that the $350 hourly rate charged by Wheeler is reasonable.

Jackson did not submit a declaration.  The only evidence about Jackson's experience, reputation and ability consists of Wheeler's statement in his declaration that, "[i]n 2017, Charny & Wheeler employed Elizabeth Jackson as a paralegal, a then-graduate of Brooklyn Law School, since admitted to the New York Bar."  Wheeler did not identify Jackson's customary hourly rate. Jackson's hourly rate charged in this case appears to be $125, and Exhibit 1 to Wheeler's declaration shows that, between September 11 and 26, 2017, Jackson expended 10.2 hours drafting and proofreading the complaint.  However, absent Jackson's declaration or other evidence about Jackson's customary hourly rate, experience, reputation and ability, the Court is unable to perform "a case specific inquiry into the prevailing market rates" for paralegals of similar experience and skill to Jackson.  Farbotko, 433 F.3d at 209.  The Court finds that Lee failed to satisfy his burden of showing by satisfactory evidence that Jackson's hourly rate is reasonable.

(b) Reasonable Hours

Having failed to establish that Jackson's hourly rate is reasonable, the Court finds that Lee also failed to establish that 10.2, the number of hours she claims for drafting and editing the complaint, is reasonable.  Exhibit 1 to Wheeler's declaration contains entries by Charny that are vague because they reference an unidentified person and an unexplained acronym, "Wright": (1) March 26, 2018 entry includes "telephone conference with Wright re default"; and (2) April 13, 2018 entry includes "Prepare ccmp, confer with Wright re same; file same."  Moreover, Exhibit 1 includes attorneys' entries for time performing administrative and duplicative tasks at the attorneys' respective hourly rates, such as filing and serving default judgment motion by Charny and filing default judgment and inquest submission by Wheeler.  This is a simple action involving a single plaintiff and a short period of employment, resulting in a default judgment.

No justification is provided for the hours claimed by Charny, as it does not appear that this action required his level of experience and expertise, which is also apparent from the fact that paralegal Jackson drafted the complaint.  Similarly, no reason was provided justifying duplicative work on the default judgment by both, Charny and Wheeler.  Accordingly, the Court finds that ten is a reasonable number of hours for the legal services rendered by Charny, and 39 is a reasonable number of hours for the legal services rendered by Wheeler.

(c)  Costs

Concerning costs, Exhibit 2 to Wheeler's declaration includes costs for the following: printing, copying, legal research, filing fees, service fees, mailing postage, PACER, "Amtrak" and "Metro North."  On April 18, 2018, $82 is claimed for "Amtrak," while on August 17, 2018, $29 is claimed for "Amtrak" and $18.50 for "Metro North."  Wheeler is the only person who billed time for traveling to the courthouse, but he failed to explain the significant difference between the cost of his trips on April 18, 2018, and August 17, 2018.  The Court finds that $785 is a reasonable amount for costs expended in connection with this action.

The Court finds that $19,435 is the reasonable amount of attorney's fees and costs consisting of: (a) $18,650, in attorney's fees; and (b) $785, in costs.

## RECOMMENDATION

For the foregoing reasons, I recommend that $81,719 in damages be awarded, consisting of: (1) $19,350, for overtime compensation pursuant to FLSA; (2) $18,440, for breach of contract; (3) $5,000, for violation of wage statement requirements pursuant to NYLL; (4) $72, for unlawful wage deductions; (5) $19,422, in liquidated damages; (5) $19,435, in attorney's fees and costs.  I also recommend that pre-judgment and post-judgment interest be calculated, as explained above, and awarded.

27

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable J. Paul J. Oetken, 40 Centre Street, Room 2101, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Oetken.  ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.***  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated:  New York, New York                          Respectfully submitted,
            September 2, 2020

                                                            _Kevin Nathaniel Fox_
                                                            KEVIN NATHANIEL FOX
                                                            UNITED STATES MAGISTRATE JUDGE